Todd D. Carpenter (CA 234464)
    tcarpenter@carlsonlynch.com
Brittany C. Casola (CA 306561)
    bcasola@carlsonlynch.com
**CARLSON LYNCH LLP**
1350 Columbia St. Ste. 603
San Diego, California 92101
Tel: (619) 762-1900
Fax: (619) 756-6991

Jeffrey D. Kaliel (CA Bar No. 238293)
    jkaliel@kalielpllc.com
Sophia Goren Gold (CA Bar No. 307971)
    sgold@kalielpllc.com
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009
Tel: (202) 350-4783

*Attorneys for Plaintiff and the Putative Class*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

DAVID SPONHEIM, individually and on behalf of all others similarly situated

Plaintiff,

v.

CITIBANK, N.A.,

Defendant.

Case No.   8:19-cv-00264-JVS-ADS

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Date: June 10, 2019
Time: 1:30 p.m.
Ctrm: 10C

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION…………………………………………………………………..1

II. FACTUAL BACKGROUND………………………………………………….2

III. ARGUMENT……………………………………………………………………..4

   A. Citibank's Arbitration Provision is Unenforceable Under *McGill v. Citibank, N.A.* Because It Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief In Any Forum……………………………………………………………4

      1. Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief………………………………………………....4

      2. The Arb. Clause Contains the Type of Waiver Prohibited by *McGill*………………………………………………………………5

   B. Plaintiff Is Not Required to Seek Public Injunctive Relief But Nevertheless Does So…………………………………………………………...…7

      1. The Relief Plaintiff Seeks is Irrelevant……………………………..7

      2. Plaintiff Seeks to Enjoin Citibank from Misrepresenting Its Fee Practices To the Detriment of the Public………………………….....8

      3. Plaintiff May Seek Both Public Injunctive Relief and Damages on Behalf of a Class…………………………………………………….9

   C. The Federal Arbitration Act Does Not Preempt the *McGill* Rule………….13

      1. The *McGill* Rule is Not Preempted by the FAA Because The Prohibition Against Waiver of the Right to Seek Public Injunctive Relief is a Generally Applicable Contract Defense That Triggers the FAA's "Savings Clause"……………………………………………..15

      2. The *McGill* Rule Does Not Interfere With the Fundamental Attributes of Arbitration……………………………………………16

      3. The *McGill* Rule Does Not Effectively Disfavor Arbitration…….21

      4. The *McGill* Rule is in Accord With the United States Supreme Court's Decision in *Italian Colors*.................................................22

   D. A Stay Should Be Denied…………………………………………………..22

IV. CONCLUSION………………………………………………………………..23

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

# TABLE OF AUTHORITIES

**Cases**

*Adkins v. Comcast Corp.*,
  2018 WL 4846548 (N.D. Cal. Feb. 15, 2018)........................................13, 14

*Am. Cent. E. Tex. Gas Co. v. Union Pac. Res. Grp., Inc.*,
  93 F. App'x 1, 11 (5th Cir. 2004) ............................................... 19

*American Express Co. v. Italian Colors Restaurant*,
  570 U.S. 228 (2013) ....................................................*passim*

*AT&T Mobility, Inc. v. Concepcion*,
  563 U.S. 333 (2011) ....................................................*passim*

*Biller v. Toyota Motor Co.*,
  668 F.3d 655 (9th Cir. 2012) ............................................... 18

*Blair v. Rent-A-Ctr., Inc.*,
  2017 WL 4805577 (N.D. Cal. Oct. 25, 2017)........................................14, 21

*California v. Am. Stores Co.*,
  495 U.S. 271 (1990) ............................................... 19

*Cardenas v. AmeriCredit Fin. Servs.*,
  2010 WL 3619851 (N.D. Cal. Sep. 13, 2010) ..........................................9, 10

*Cheverez v. Plains All Am. Pipeline, LP*
  2016 WL 4942328 (C.D. Cal. Feb. 25, 2016) .............................................10

*Circuit City Stores, Inc. v. Najd*,
  294 F.3d 1104 (9th Cir. 2002) ............................................... 18

*Coast Plaza Doctors Hosp. v. Blue Cross of California*,
  83 Cal. App. 4th 677 (Sept. 7, 2000)..............................................10

*Coker v. JPMorgan Chase Bank, N.A.*,
  364 P.3d 176 (Cal. 2016)............................................... 16

*Croucier v. Credit One Bank, N.A.*,
  2018 WL 2836889 (S.D. Cal. June 11, 2018)..............................................11

*Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*,
  2002 WL 1489521 (N.D. Tex. July 9, 2002) .............................................19

*Farrow v. Fujitsu Am., Inc.*,
  37 F. Supp. 3d 1115 (N.D. Cal. 2014) .............................................23

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013), ........................................ 2, 18, 21

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

*Ferguson v. Corinthian Colleges*,
   2012 WL 27622 (C.D. Cal. Jan. 5, 2012).............................................. 10

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) ................................................... 5, 12

*In re Marriage of Fell*,
   55 Cal. App. 4th 1058 (Cal. Ct. App. 1997)....................................16

*Iskanian v. CLS Transportation Los Angeles LLC*,
   327 P.3d 129 (2014)...............................................................14, 21

*Johnson v. JP Morgan Chase Bank, N.A.*,
   2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ...........................................11

*Kilgore v. Keybank, Nat'l Ass'n*,
   718 F.3d 1052 (9th Cir. 2013) ................................................. 10

*League of Residential Neighborhood Advocates v. City of Los Angeles*,
   486 F.3d 1052 (9th Cir. 2007) ................................................ 16

*Lee v. Postmates, Inc.*,
   2018 WL 4961802 (N.D. Cal. Oct. 15, 2018)................................. 17, 18, 19

*Little v. Auto Stiegler, Inc.*,
   63 P.3d 99 (Cal. 2003) ......................................................... 16

*Marmet Health Care Ctr., Inc. v. Brown*,
   565 U.S. 530 (2012) ........................................................... 21

*Mary R. v. B. & R. Corp.*,
   149 Cal. App. 3d 308 (Cal. Ct. App. 1983) ..................................... 16

*McArdle v. AT&T Mobility, Inc.*,
   2017 WL 4354998 (N.D. Cal. Oct. 2, 2017)..........................................*passim*

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (Cal. 2017)..................................................................*passim*

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ......................................................13, 18, 22

*Nghiem v. NEC Electronic, Inc.*,
   25 F.3d 1437 (9th Cir. 1994) ................................................... 18

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
   388 U.S. 395 n.12 (1967) ....................................................12

*Rappley v. Portfolio Recovery Assocs., LLC*,
   2017 WL 3835259 (C.D. Cal. Aug. 24, 2017)........................................ 11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

*Rent-A-Center West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ....................................................................13, 15

*Roberts v. AT&T Mobility, LLC*,
  2018 WL 1317346 (N.D. Cal. Mar. 14, 2018) .......................................*passim*

*Sakkab v. Luxottica Retail N. Am., Inc.*,
  803 F.3d 425 (9th Cir. 2015) .................................................*passim*

*Saturday Evening Post Co. v. Rumbleseat Press, Inc.*,
  816 F.2d 1191 (7th Cir. 1987) ................................................ 19

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ......................................................18

*Simula, Inc. v. Autoliv, Inc.*,
  175 F.3d 716 (9th Cir. 1999) ................................................ 18

*Sparling v. Hoffman Constr. Co.*,
  864 F.2d 635 (9th Cir. 1988) ................................................ 23

*Tillage v. Comcast*,
  No. 17-C-6477 (N.D. Cal. Feb. 15, 2018) ....................................14

*Wallace v. Wells Fargo Bank, N.A.*,
  (Cal. Sup. Ct. Aug. 7, 2018).................................................. ..7

*Whole Space Indus., Ltd. v. Lewis Hyman, Inc.*,
  2010 WL 11549574 (C.D. Cal. Aug. 2, 2010)................................ 23

*Wright v. Sirius XM Radio Inc.*,
  2017 WL 4676580 (C.D. Cal. June 1, 2017) ...............................11, 12

**Statutes**

9 U.S.C. § 2 ...............................................................12, 13

9 U.S.C. § 3 ............................................................... 23

Cal. Lab. Code § 2698 .................................................... 14

Cal. Civ. Code § 3513.....................................................5, 7, 13, 16

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........................1, 3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

Plaintiff David Sponheim ("Sponheim"), on behalf of himself and all persons similarly situated, hereby opposes Defendant Citibank, N.A.'s ("Citibank") motion to compel arbitration and stay the action, (Dkt. No. 13), and responds as follows:

## I.  **INTRODUCTION**

Citibank seeks to compel Sponheim to arbitrate his claims.  The trouble is that the arbitration clause ("Arb. Clause") contained in Citibank's Client Manual Consumer Accounts and Addendum (the "Account Agreement") is invalid and unenforceable under California law.  The Arb. Clause requires Sponheim to arbitrate all claims, but then also prohibits the arbitrator from awarding injunctive relief for the benefit of others who are not parties to the arbitration proceedings.  As a result, Sponheim is precluded from bringing claims for public injunctive relief in any forum, including in arbitration.  Thus, the Arb. Clause violates the California Supreme Court's decision in *McGill v. Citibank, N.A.,* 393 P.3d 85 (Cal. 2017), which held that contracts that deprive individuals of the right to seek public injunctive relief in any forum are void and unenforceable.

Citibank first argues that Sponheim's Complaint, (Dkt. No. 1, the "Complaint" or "Comp."), does not actually seek public injunctive relief, but this argument fails.  In his Complaint, Sponheim seeks an injunction on behalf of the general public to protect all California consumers eligible to open a consumer checking account from Citibank's misrepresentations regarding the true nature and assessment of its Foreign Exchange Fees made in its publicly available marketing and account documents. (Comp. ¶ 64, and Prayer for Relief section (i).) "The general public relies on representations in these documents in making important financial decisions regarding within whom they would like to open a checking account." (*Id.* ¶ 8.) It is well established under California law that injunctive relief pursuant to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, is relief that primarily benefits the public—i.e., public injunctive relief. Thus, Citibank cannot dispute that Sponheim seeks injunctive relief on behalf of the public.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

Lastly, Citibank argues that *McGill* is preempted, but that argument also fails.  The *McGill* rule expresses no preference for litigation over arbitration, requiring only that contracts allow signatories to pursue public injunctive relief in *some* forum, whether arbitral or judicial.  *McGill* is thus a "generally applicable contract defense" that falls within the savings clause of the Federal Arbitration Act ("FAA").  *See e.g., McArdle v. AT&T Mobility, Inc.*, No. 09-cv-01117-CW, 2017 WL 4354998, at *3–4 (N.D. Cal. Oct. 2, 2017); *see also Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425, 432 (9th Cir. 2015) (quoting *AT&T Mobility, Inc. v. Concepcion,* 563 U.S. 333, 339 (2011).  Likewise, since public injunctive relief is perfectly capable of being resolved in arbitration with no additional formal procedures, *c.f. Ferguson v. Corinthian Colleges, Inc.,* 733 F.3d 928, 937 (9th Cir. 2013), the neutral rule articulated in *McGill* does not conflict with the FAA's purposes, *see Sakkab,* 803 F.3d at 433–39.  *McGill* reflects precisely the type of rule that the Supreme Court has recognized is not preempted by the FAA.  *See American Express Co. v. Italian Colors Restaurant,* 570 U.S. 228 (2013) (stating that the FAA does not require the enforcement of agreements that "forbid the assertion of certain statutory rights" or "eliminat[e] . . . [the] right to pursue [a] statutory remedy").  *McGill* is therefore consistent with the FAA, not preempted by it.

Finally, because Citibank's motion to compel arbitration should be denied, its request to stay the proceedings pending the outcome of arbitration should be denied as moot.  For these reasons, and the reasons discussed below, Citibank's motion should be denied in its entirety.

## II.   <u>FACTUAL BACKGROUND</u>

This putative class action arises out of Citibank's deceptive assessment of Foreign Exchange Fees made in conjunction with online purchase transactions initiated within the United States. (*See generally* Comp.) Citibank's Account Agreement, the publicly-available documents governing all deposit accounts, set forth that accountholders will be charged a 3.00% Foreign Exchange Fee on all foreign transactions made outside of the

2

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

United States. (*Id.* ¶¶ 3, 22–23; *see also* Exhibit 1 to the Comp., p. 51.)  Reasonable consumers interpret this disclosure to mean they will never be charged a Foreign Exchange Fee unless they make a debit card transaction while they are physically outside of the United States.  (*Id.* ¶ 24.)  In reality, however, and in an effort to maximize revenue, Citibank breaches this contractual provision and offends reasonable consumers' expectations by assessing Foreign Exchange Fees on transactions made by consumers on computer terminals located within the United States. (*Id.* ¶¶ 12, 33–36.)

Plaintiff David Sponheim fell victim to this fraudulent practice on or about March 15, 2018 when he utilized his Citibank debit card to make a purchase online from a Canada-based retailer, while he was physically present at his residence located in Los Alamitos, California.  (*Id.* ¶ 31.) Plaintiff was surprised to learn that Citibank had assessed him a Foreign Exchange Fee for his purchase, despite making such purchase while he was physically present in the United States.  (*Id.* ¶ 32.)

Citibank's account disclosures failed to adequately inform Plaintiff, other accountholders, and the general public that the a Foreign Exchange Fee could be imposed on them even if they were to engage in an online transaction from the United States with a foreign merchant.  (*Id.* ¶ 29.)  Citibank's misrepresentations about the true nature and assessment of Citibank's Foreign Exchange Fees, as set forth in their publicly-available marketing materials, impede members of the general public from making important decisions regarding who to bank with and what transactions to make, thereby, making public injunctive relief a necessary remedy.  (*Id.* ¶ 30.)

Based on these fraudulent practices, Plaintiff filed his class action complaint on February 11, 2019, alleging a (1) breach of contract, including the covenant of good faith and fair dealing, on behalf of himself and a California class of Citibank checking account holders who similarly incurred a Foreign Exchange Fee, and a (2) claim under the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq. on behalf of himself, the general public, and the California class.  (*See* Dkt. No. 1.)  In addition to seeking

restitution of all wrongfully obtained fees, Plaintiff seeks the entry of a public injunction prohibiting Citibank from continuing to misrepresent the true nature, amount, and assessment of Foreign Exchange Fees to its customers, as advertised in its publicly available documents and marketing materials. (*Id.* at Prayer for Relief.)

In an effort to defeat Plaintiff's claim for public injunctive relief, Citibank hereby moves to compel arbitration—where such public injunctive relief cannot be maintained pursuant to the terms of its Arb. Clause.

## III.   ARGUMENT

### A.   Citibank's Arbitration Provision is Unenforceable Under *McGill v. Citibank, N.A.* Because It Improperly Deprives Consumers of the Right to Seek Public Injunctive Relief In Any Forum

Citibank's Motion to Compel Arbitration must be denied because its Arb. Clause unlawfully deprives consumers of the right to seek public injunctive relief in any forum—whether in court or in arbitration—which is in violation of *McGill v. Citibank, N.A.,* 393 P.3d 85 (Cal. 2017), the Supreme Court of California's opinion reviewing *this Defendant's own arbitration provision.*

#### 1.   Background: *McGill* Prohibits Waivers of the Right to Seek Public Injunctive Relief.

In *McGill*, the Supreme Court of California unanimously held that a contract cannot waive the right of a consumer to bring claims for public injunctive relief in any forum, which is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." 393 P.3d at 90. The issue decided in *McGill* was whether an arbitration provision "is valid and enforceable insofar as it purports to waive [plaintiff]'s right to seek public injunctive relief *in any forum*." *Id.* (emphasis in original).  In *McGill,* the same defendant here, Citibank, sought to enforce a mandatory arbitration clause contained in its account agreement, which (like here) barred parties from seeking any relief in court and prohibited them from pursuing claims for public injunctive relief in arbitration. This meant that the agreement prohibited parties from seeking public

1  injunctive relief in any forum, effectively waiving the right to seek such relief at all.  After

2  finding the complaint sought public injunctive relief, and that such relief was available

3  under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law

4  ("UCL"), and False Advertising Law ("FAL"), the California Supreme Court concluded

5  any contract that waives the right to seek public injunctive relief is invalid and

6  unenforceable under California law. *Id.* at 91–93. This statement of California law binds

7  this Court. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) ("In

8  interpreting state law, federal courts are bound by the pronouncements of the state's highest

9  court").

10       The California Supreme Court relied on California Civil Code § 3513 which

11  provides that "a law established for a public reason cannot be contravened by a private

12  agreement." Because the relief available under the UCL, the CLRA, and the FAL is

13  "primarily for the benefit of the general public," any waiver of the right to seek public

14  injunctive relief under those statutes "would seriously compromise the public purposes the

15  statutes were intended to serve." *McGill*, 393 P.3d at 94.

16       Accordingly, the waiver of the right to seek such relief found in Citibank's

17  arbitration provision was deemed invalid and unenforceable.  *See id.*

18  **2.  The Arb. Clause Contains the Type of Waiver Prohibited by *McGill*.**

20  Citibank's Arb. Clause contains precisely the type of waiver *McGill* prohibits. The

21  Arb. Clause in Citibank's Client Manual Consumer Accounts requires:

22       [A]ll Disputes are subject to arbitration no matter what legal theory they are
23       based on or what remedy (damages, or injunctive or declaratory relief) they
24       seek, including claims based on contract, tort (including intentional tort),
         fraud, agency, your or our negligence, statutory or regulatory provisions, or
25       any other sources of law; claims made as counterclaims, cross-claims, third
26       party claims, interpleaders or otherwise; claims made regarding past, present
         or future conduct; and claims made independently or with other claims.
27       …

5
PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES<br>IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION<br>AND STAY ACTION

Disputes brought as part of a class action, private attorney general or other representative action can be arbitrated only on an individual basis. The arbitrator has no authority to arbitrate any claim on a class representative basis and may award relief only on an individual basis.

…

An arbitration award shall decide the rights and obligations only of the parties named in the arbitration, and shall not have any bearing on any other person or dispute.

(Comp., Ex. 1 at 47–48.) Citibank does not deny that the Arb. Clause bars its customers from seeking public injunctive relief.  Because Plaintiff must bring **_all_** of his disputes related to the account agreement in arbitration, including those related to public injunctive relief, and the Arb. Clause also prohibits Plaintiff from raising such public injunctive relief claims in arbitration, Citibank's Arb. Clause prohibits Plaintiff's ability to seek public injunctive relief **_anywhere_**; the prohibition on bringing any "Disputes" to court, combined with the waiver language in the Arb. Clause regarding the seeking of injunctive relief on behalf of any other person not privy to the agreement, "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public."  *McGill*, 393 P.3d at 87.  Therefore, Citibank's Arb. Clause is void and unenforceable under California law pursuant to *McGill* because it deprives Plaintiff the right to seek public injunctive relief in *any forum.*

The Arb. Clause's language is akin to the arbitration clause recently invalidated in the Northern District in *Roberts v. AT&T Mobility, LLC,* No. 15-CV-03418-EMC, 2018 WL 1317346 (N.D. Cal. Mar. 14, 2018).  In *Roberts,* the arbitration clause sent "all disputes and claims between us" to arbitration. *Roberts,* 2018 WL 1317346 at *8.   This is substantively similar to the Arb. Clause's broad definition of what encompasses "all Disputes," as quoted above. The *Roberts* arbitration clause further stated: "The arbitrator may award declaratory or *injunctive relief only in favor of the individual party seeking relief* and only to the extent necessary to provide relief warranted by that party's individual claim." *Id.* (emphasis added). As noted above, the same language exists here.

6

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

Accordingly, this Court should follow its sister court in *Roberts* and invalidate Citibank's Arb. Clause.

## B. Plaintiff is Not Required to Seek Public Injunctive Relief But Nevertheless Does So

Citibank concedes its Arb. Clause provision expressly bars Plaintiff from seeking public injunctive relief in any forum. Nonetheless, Citibank argues its arbitration provision is still enforceable because the injunctive relief Plaintiff seeks is purportedly not on behalf of the general public. (Deft. Br. at 10.) Citibank's last-ditch effort to save its unenforceable Arb. Clause fails. As an initial matter, the type of relief Plaintiff seeks is a red herring: if Citibank's Arb. Clause violates *McGill*, it is unenforceable. Period. But even assuming such an inquiry were relevant, Plaintiff plainly seeks pubic injunctive relief. "Public injunctive relief" is relief that "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 393 P.3d at 87. Here, Plaintiff seeks an injunction on behalf of the general public to protect all California consumers eligible to open a consumer checking account from Citibank's market-distorting deception in publicly available marketing and account documents. Plaintiff therefore seeks public injunctive relief.

### 1. The Relief Plaintiff Seeks is Irrelevant

The question of whether or not Plaintiff seeks "public injunctive relief" is irrelevant. If Defendant's arbitration provision violates Civ. Code § 3513, there is no valid agreement to arbitrate and this Court may not compel arbitration regardless of the relief Plaintiff seeks. *See* Exhibit A, *Wallace v. Wells Fargo Bank, N.A.*, No. 2017-1-CV-31775 (Cal. Sup. Ct. Aug. 7, 2018) Order Denying Defendant's Motion to Compel Arbitration, at p. 5.

Citibank's citation to *McGovern v. U.S. Bank N.A.,* No. 18-CV-1794-CAB-LL, 2019 WL 329537, at *4 (S.D. Cal. Jan. 25, 2019) in support of this aspect of its argument is misleading. Indeed, the court in *McGovern* was unpersuaded that a "plaintiff's failure to

7

seek public injunctive relief necessarily renders *McGill* inapplicable."[1] *Id*. at *5. The court pointed out that previous courts considering the issue had failed to explain "why the question of whether an arbitration agreement is null and void based on *McGill* depends on the form of relief sought by a plaintiff." *Id*. In sum, because Citibank concedes its Arb. Clause runs contrary to *McGill*, its Arb. Clause is unenforceable irrespective of the relief Plaintiff seeks.

### 2. Plaintiff Seeks to Enjoin Citibank From Misrepresenting Its Fee Practices To the Detriment of the Public.

Nevertheless, Plaintiff does in fact seek public injunctive relief. Plaintiff brings this case, in part, to enjoin Citibank from misleading the public about its fee practices. To that end, Plaintiff seeks, "An order on behalf of the general public enjoining CITI from continuing to misrepresent its Foreign Exchange Fee policies in its publicly available documents and marketing materials, such as its 'Client Manual' and 'Addendum.'" (Compl. at 15 ("Prayer for Relief").) Because this injunctive relief would benefit the public at large (current Citibank customers and California consumers eligible to open Citibank accounts), Citibank's assertions that Sponheim is not seeking public injunctive relief must fail.

Citibank misleadingly and deceptively misrepresents and omits material facts pertaining to its fee practices in publicly-available account documents. (*Id.* at ¶¶ 8-12.) Specifically, Citibank misrepresents its Foreign Exchange Fee policies in its Client Manual and Addendum, both of which are publicly available. (*Id.* ¶¶ 8, 62.) These documents mislead the general public and existing accountholders alike. (*See id.*) Sponheim seeks injunctive relief because members of the public considering opening a bank account have the right to accurate information regarding the potential fees. (*Id*. at ¶ 12.) Indeed, fees

---

[1] *McGovern* ultimately held the *McGill* decision was preempted. For the reasons discussed in the following section, Plaintiff disagrees with *McGovern's* ultimate conclusion on preemption.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

are one of the most important factors that consumers take into account when deciding which financial institution to bank with. (*Id.* at ¶ 10.)

For these reasons, Citibank is simply wrong when it asserts that the "primary purpose" of Plaintiff's suit is to seek redress for his own injuries. (*See* Deft. Br. at 11.) Plaintiff alleges "the general public are likely to be deceived such that public injunctive relief is warranted." (*Id.* at ¶ 62.) Plaintiff is seeking injunctive relief that would end those unfair and deceptive practices. In sum, because Plaintiff seeks to stop the dissemination of misleading account documents, which affects all individuals who may open a checking account, the remedy is "public injunctive relief" as defined by *McGill*, 393 P.3d at 89.

### 3.    Plaintiff May Seek Both Public Injunctive Relief and Damages on Behalf of a Class.

Citibank argues the relief Plaintiff seeks would only benefit a "limited class" rather than the public. But as explained in the previous section, preventing Citibank from continuing to misrepresent its fee policies benefits more than just the putative class members—it benefits the California public. Moreover, Plaintiff's claim for damages does not undermine or conflict with his claim for injunctive relief. The two remedies are not mutually exclusive. Indeed, the Northern District of California has previously considered and rejected the argument that the relief sought was not public because it "only" benefitted the putative class, noting that if that were true, a UCL claim for injunctive relief would never be considered a public injunction because the scope would always be defined by the class.

> [I]t is evident that the relief being sought is not limited to Plaintiffs individually, but rather, extends to members of the public impacted by AmeriCredit's allegedly unfair business practices. Indeed, under AmeriCredit's reasoning, a UCL claim for injunctive relief would never be considered an injunction for the benefit of the public because the scope of relief would always be defined by the class. The Court is aware of no authority to support such an expansive proposition of law.

*Cardenas v. AmeriCredit Fin. Servs.*, 2010 WL 3619851, at *9 (N.D. Cal. Sep. 13, 2010).

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

Citibank's attempt to cabin public injunctive relief into a small subset of UCL claims fails. Indeed, consistent with the public purpose of that statute, California courts generally interpret claims for public injunctive relief broadly. *See, e.g., id.,* (plaintiffs' request for an injunction preventing defendant from issuing defective notices to consumers constituted claim for public injunctive relief); *Ferguson v. Corinthian Colleges*, No. SACV 11-0127 DOC, 2012 WL 27622, at *4 (C.D. Cal. Jan. 5, 2012) (emphasis in original) (plaintiff's claims seeking "to prevent Defendants from deceiving vulnerable consumers … about what it means to enroll at one of Defendants' institutions, namely, the true cost of attendance …" were claims for public injunctive relief, in part because "these claims, by definition, seek to protect *future* students"); *Coast Plaza Doctors Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 691–92 (2000), *as modified* (Sept. 7, 2000) ("a claim for injunctive relief under [the UCL] is brought by a plaintiff acting in the capacity as a private attorney general … 'Coast Plaza seeks an injunction prohibiting Blue Cross from providing reimbursement rates at unreasonable and anti-competitive levels.' Such relief would certainly constitute a public injunctive remedy…"). In fact, false advertising claims are just one of the many types of claims that can support a request for public injunctive relief. *See, e.g., Cheverez v. Plains All Am. Pipeline, LP*, 2016 WL 4942328, at *4 (C.D. Cal. Feb. 25, 2016) ("Plaintiffs also request other appropriate injunctive relief including public injunctive relief. For example, Plaintiffs request an order requiring Defendants to restore fisheries impacted by the spill and … an order requiring Defendants to operate their pipelines in such a way to ensure no further spills and resulting loss of jobs"). Though requests for public injunctive relief can arise from a variety of harmful and/or deceptive practices, the one thing all public injunctive relief claims have in common is "the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." *McGill*, 2 Cal.5th at 951.

The cases Citibank cites to the contrary are inapposite. For example, Citibank incorrectly cites *Kilgore v. KeyBank, Nat'l Ass'n*, which predates *McGill* and considers

10

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"the *Broughton-Cruz* rule"—which *McGill* explicitly did not address. 718 F.3d 1052, 1060 (9th Cir. 2013). *Kilgore* did not explore what is and what is not public injunctive relief. There was no need to, as the injunctive relief sought would have only benefited 120 class members, and the defendant had completely withdrawn from the industry in question, so the prospective injunction "relate[d] only to past harms suffered by members of the limited putative class." *Id.* at 1061. Unlike *Kilgore,* the injunctive relief class involves all prospective accountholders who are members of the general public and seeks to enjoin an ongoing practice.

Citibank also relies on *Johnson v. JP Morgan Chase Bank, N.A.,* No. EDCV 17-2477 JGB (SPx), 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018), and *Wright v. Sirius XM Radio Inc.*, No. SACV 16-01688, 2017 WL 4676580 (C.D. Cal. June 1, 2017), but these cases are unpersuasive to the extent they conflict with *McGill*. They are also distinguishable on their facts.

In *Wright*, the alleged unfair practices solely affected *existing* Sirius XM customers. Additionally, the complaint only tangentially made vague, generalized allegations of misrepresentation. 2017 WL 4676580 at *27-28. In contrast, here, the Complaint clearly articulates how Citibank's deceptive practices affect both existing customers *and* the public at large who may be deciding with whom to bank. And in *Johnson*, the court found that "the only individuals who would theoretically benefit from an injunction: were those under contract, not the 'public at large.'" *Id.* at *7. This is also not true here, as the prayer for public injunctive relief is based on deceptions to the general public in publicly available account documents, and the complaint (and this brief) explain that the injunctive relief requested is for the benefit of the general public.[2]

---

[2] Citibank's cites additional cases are likewise inapposite. *Croucier v. Credit One Bank, N.A.*, No. 18cv20-MMA, 2018 WL 2836889, at *5 (S.D. Cal. June 11, 2018), regarded the unlawful conduct of over 100 calls directed to the plaintiff, and not other individuals or the public at large. In *Rappley v. Portfolio Recovery Assocs., LLC*, No. EDCV 17-108 JGB (SPx), 2017 WL 3835259, at *6 (C.D. Cal. Aug. 24, 2017), the plaintiff likewise sought relief on behalf of a specific subgroup whose debt had already been purchased by defendant

11

Further, to the extent that *Johnson* and *Wright* are contrary to the holdings of *McGill* (and the caselaw it relied on) in defining public injunctive relief, the California Supreme Court's interpretation of its own statute must control. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002) ("In interpreting state law, federal courts are bound by the pronouncements of the state's highest court."). While Citibank would like to shirk any accountability for its actions and the resultant negative effect on accountholders, the banking industry, and the public at large, California law is clear that consumer protection actions to stop such wrongful actions do indeed seek public injunctive relief. *See McGill*, 2 Cal.5th at 957 ("we disagree with Citibank that McGill has failed adequately to . . . explain how the public at large would benefit from [the injunctive] relief.").

## C.    The Federal Arbitration Act Does Not Preempt the *McGill* Rule

Unable to avoid *McGill,* Citibank must rely on preemption. But the FAA does not preempt or otherwise invalidate the *McGill* rule, which is a generally applicable contract defense that does not interfere with the fundamental attributes of arbitration. While the FAA requires courts to "place arbitration agreements on equal footing with other contracts," *see AT&T Mobility, Inc. v. Concepcion,* 563 U.S. 333, 339 (2011), it was designed "to make arbitration agreements as enforceable as other contracts, but not more so," *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 n.12 (1967). By its own terms, the FAA "permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or inequity for the revocation of any contract." *Concepcion,* 563 U.S. at 339 (quoting 9 U.S.C. § 2). This language, often referred to as the savings clause, permits agreements to arbitrate to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* at 339. The *McGill* rule, which

and were harmed by unlawful debt collection practices, rather than here, where the injunctive relief is sought to keep Citibank from deceiving the general public.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

articulates a generally applicable contract defense under California law, falls squarely within the ambit of the savings clause.

The FAA does not preempt *McGill.* The FAA may preempt state law in only two limited circumstances: (1) when a contract defense is not "generally applicable," *i.e.*, it singles out arbitration agreements for special treatment, or (2) when it "conflicts with the FAA's objectives" even if it is a generally applicable contract defense. *See Sakkab v. Luxottica Retail N. Am., Inc.,* 803 F.3d 425, 433–440 (9th Cir. 2015) (quoting *Concepcion,* 563 U.S. at 339. Neither circumstance is present here.

Indeed, *McGill* itself considered and rejected arguments that the FAA would preempt its ruling. *McGill,* 363 P.3d at 94–98; *see also Adkins v. Comcast Corp.,* No 16-cv-05969-VC, 2018 WL 4846548, at *1 (N.D. Cal. Feb. 15, 2018) ("To the extent that Comcast argues the *McGill* rule is preempted by the [FAA], *McGill* itself explains why it is not."). *McGill* explained that its holding was not preempted under U.S. Supreme Court precedent holding that arbitration agreements, like other contracts, "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability." *McGill,* 363 P.3d at 94 (quoting *Rent-A-Center West, Inc. v. Jackson,* 561 U.S. 63, 68 (2010)); *see also* 9 U.S.C. § 2 (stating that written arbitration agreements are enforceable "save upon such grounds as exist at law or in equity for the revocation of any contract"). Since California Code § 3513 is a generally applicable basis for revocation of a contract, it fell within the FAA's savings clause. *McGill*, 363 P.3d at 94–98. The court supported this holding by observing that the rule is consistent with U.S. Supreme Court authority stating that "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than judicial forum." *McGill,* 393 P.3d at 95 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 628 (1985). The court also concluded that the rule was consistent with *Concepcion's* statement that the FAA "permits agreements to arbitrate to

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

1  be invalidated by 'generally applicable contract defenses' under state law." *McGill,* 393
2  P.3d at 96.

3      Several district courts have aptly held that *McGill* is not preempted because it is a
4  generally applicable contract defense that is not hostile to arbitration and does not interfere
5  with the fundamental attributes of arbitration. *See McArdle v. AT&T Mobility, LLC,* No.
6  09-cv-01117-CW, 2017 WL 4354998, at *3–4 (N.D. Cal. Oct. 2, 2017); *see also Adkins,*
7  2018 WL 4846548, at *1; *Roberts,* 2018 WL 1317346, at *6–7; *Tillage v. Comcast,* No.
8  17-C-6477 (N.D. Cal. Feb. 15, 2018) (Dkt. No. 37) (attached hereto as Exhibit B); *Blair v.*
9  *Rent-A-Car, Inc.,* No. C 17-02335 WHA, 2017 WL 4805577, at *4–5 (N.D. Cal. Oct. 25,
10  2017). *McArdle* and *Roberts* relied primarily on *Sakkab,* in which the Ninth Circuit held
11  that a state law rule prohibiting the waiver of certain substantive rights passes muster under
12  *Concepcion* and is not preempted by the FAA if (1) the rule is a generally applicable
13  contract defense, (2) the rule is not hostile to arbitration, and (3) the rule does not interfere
14  with any of the fundamental attributes of arbitration or require the adoption of formal
15  procedures akin to a class action. *See McArdle,* 2017 WL 4354998, at *3–4 (citing *Sakkab,*
16  803 F.3d at 432–39). *Sakkab* considered whether the so-called *Iskanian* rule, which bars
17  the waiver of representative claims under the Private Attorney Generals Act of 2004
18  ("PAGA"), Cal. Lab. Code § 2698, *et seq.*, was compatible with the FAA. *See Sakkab,* 803
19  F.3d at 432–39. *See also Iskanian v. CLS Transportation Los Angeles, LLC,* 327 P.3d 129
20  (2014). Since the *Iskanian* rule meets each of these requirements set forth in *Sakkab*, the
21  Ninth Circuit concluded that the FAA did not preempt that rule.

22      *McArdle* and *Roberts* correctly held that *Sakkab's* analysis applied to *McGill* "with
23  equal force." *McArdle,* 2017 WL 435998, at *4. *See also Roberts,* 2018 WL 1317346, at
24  *6 ("The Court agrees with Judge Wilken's preemption analysis in *McArdle* and
25  accordingly holds that the Ninth Circuit's reasoning in *Sakkab* is applicable to the instant
26  case."). As those courts recognized, the *McGill* rule complies with the requirements
27  articulated in *Sakkab*.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

1        The FAA does not require the enforcement of otherwise unenforceable contract

2   provisions simply because they have been inserted into an arbitration provision. And the

3   *McGill* rule, which targets the waiver of California statutory remedies, is exactly the kind

4   of rule that the Supreme Court has recognized is <u>not</u> preempted by the FAA. *See Am.*

5   *Express Co. v. Italian Colors Rest.,* 570 U.S. 228, 236–37 (2013) (stating that the FAA

6   does not require the enforcement of agreements that "forbid[] the assertion of certain

7   statutory rights" or "eliminat[e] . . . [the] right to pursue [a] statutory remedy"). Since, as

8   shown below, the *McGill* rule does not conflict with the FAA, it is not preempted.

9               **1.**       **The *McGill* Rule is Not Preempted by the FAA Because The**

10                    **Prohibition Against Waiver of the Right to Seek Public Injunctive**

11                    **Relief is a Generally Applicable Contract Defense That Triggers**
                      **the FAA's "Savings Clause"**

12       The FAA's "savings clause" states that arbitration agreements, like other contracts,

13  "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or

14  unconscionability.'" *McGill,* 393 P.3d at 94 (quoting *Rent-A-Center West, Inc. v. Jackson,*

15  561 U.S. 63, 68 (2010). The prohibition against pre-dispute waivers of the right to seek

16  public injunctive relief is a generally applicable contract defense that falls squarely within

17  the FAA's savings clause. *See e.g., McArdle,* 2017 WL 4354998, at *4. As *Sakkab*

18  explains, a defense is "generally applicable" when it applies "equally to arbitration and

19  non-arbitration agreements." *Sakkab,* 803 F.3d at 432. The *McGill* rule is one such

20  generally applicable contract defense because it bars *any* pre-dispute waiver of the right to

21  seek public injunctive relief, regardless of whether the waiver appears in an arbitration

22  agreement. *See McArdle,* 2017 WL 435998, at *4 ("The *McGill* rule is a generally-

23  applicable contract defense."). Indeed, the *McGill* court specifically noted that "a provision

24  in *any* contract—even a contract that has no arbitration provision—that purports to waive,

25  in all fora, the statutory right to seek public injunctive relief under the UCL, the CLRA, or

26  the false advertising law is invalid and unenforceable under California law." *McGill,* 393

27  P.3d at 94.

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

1   The statute relied upon by the *McGill* court, California Civil Code § 3513, is applied
2   to invalidate private waivers of public rights in all sorts of contracts. *See, e.g.*, *League of*
3   *Residential Neighborhood Advocates v. City of Los Angeles*, 486 F.3d 1052, 1057 (9th Cir.
4   2007) (citing § 3513 as a basis for invalidating a settlement agreement that violated zoning
5   laws); *Coker v. JPMorgan Chase Bank, NA*, 364 P.3d 176, 188 (Cal. 2016) (citing § 3513
6   to invalidate agreement holding borrower responsible for balance of mortgage loan); *In re*
7   *Marriage of Fell*, 64 Cal. Rptr. 2d 522 (Cal. Ct. App. 1997) (citing § 3513 to invalidate
8   marriage dissolution and settlement agreement); *Mary R. v. B. & R. Corp.*, 196 Cal. Rptr.
9   871 (Cal. Ct. App. 1983) (citing § 3513 to invalidate a stipulated confidentiality order
10  between a physician and patient he allegedly molested); *see also Little v. Auto Stiegler,*
11  *Inc.*, 63 P.3d 979, 989 (Cal. 2003) (stating that one "long-standing ground for refusing to
12  enforce a contractual term is that it would force a party to forgo unwaivable public rights").
13  Thus, the *McGill* court was clear that a pre-dispute waiver of the right to seek public
14  injunctive relief would not pass muster regardless of whether it was inserted in an
15  arbitration provision or another contract provision. *See McGill*, 393 P.3d at 94.

16  Accordingly, because the *McGill* rule applies equally to arbitration and non-
17  arbitration agreements, the *McGill* rule is a generally applicable contract defense under the
18  FAA and thus is not preempted[3].

### 2. The *McGill* Rule Does Not Interfere With the Fundamental Attributes of Arbitration

21  Nor does the *McGill* rule, which simply preserves the right to pursue a public
22  injunctive relief claim in *some* forum (whether arbitration or court), interfere with the
23  fundamental attributes of arbitration. The FAA does not require "strict enforcement of all

---

[3] Because numerous courts agree that *McGill* is a generally applicable contract defense, *McGovern v. U.S. Bank N.A.,* No. 18-CV-1794-CAB-LL, 2019 WL 329537, at *9 (S.D. Cal. Jan. 25, 2019) is an extreme outlier and thus, Defendant's reliance thereon is unpersuasive.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

terms contained in an arbitration agreement, including terms that are unenforceable under generally applicable state law;" such a reading would be inconsistent with the savings clause found in § 2, and indeed would render the savings clause "wholly ineffectual." *Sakkab,* 803 F.3d at 434. Instead, to ensure arbitration agreements are enforced according to their terms, the FAA preempts generally applicable state contract defenses *only* when they "interfere with the fundamental attributes of arbitration," such as informality, speed, and cost-effectiveness. *Concepcion,* 563 U.S. at 344; *Sakkab,* 803 F.3d at 434; *Roberts*, 2018 WL 1317346, at *6 (claims for public injunctive relief do not interfere with fundamental attributes of arbitration).

Citibank argues that the *McGill* rule would effect a fundamental change to the traditional arbitration process by allowing for the remedy of public injunctive relief. Defendant contends that arbitrators typically do not award public injunctive relief because the proceedings necessary to enforce the same are "inherently incompatible with arbitration" and allowing them to do so would "defeat the 'prime objective' of 'streamlined proceedings and expeditious results.'" (Deft. Br. at 16–18.)  However, Citibank utterly fails to show how these "procedural complexities," (Deft. Br. at 18, fn. 6), to the extent they actually exist, interfere with the fundamental attributes of arbitration.  The *Roberts* court already rejected an argument similar to that made by Citibank regarding the "procedural complexities" and pointed out that any "evidence [with respect to a claim for public injunctive relief] will likely be particularly straightforward . . . [and that] crafting a public injunction as relief, assuming Plaintiffs were to prevail, would [not] involve any particular complexities. There is nothing inherently complex that *would interfere with fundamental attributes of arbitration* should a public injunction claim be sent to arbitration." 2018 WL 1317346, at *7 (emphasis added).

Plus, binding precedent holds that claims for public injunctive relief are suitable for, and can be decided in, arbitration. "[E]ven where a specific remedy has implications for the public at large, it must be arbitrated under the FAA if the parties have agreed to arbitrate

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

it."  *Ferguson v. Corinthian Colleges, Inc.,* 733 F.3d 928, 935 (9th Cir. 2013); *accord Postmates,* 2018 WL 4961802, at *8–9.  "There is nothing inherently complex that would interfere with fundamental attributes of arbitration should a public injunction claim be sent to arbitration." *Roberts,* 2018 WL 1317346, at *7.

As a general matter, complexity is no barrier to arbitration.  *See Sakkab,* 803 F.3d at 438 ("[P]otential complexity should not suffice to ward off arbitration where, as here, the complexity flows from the *substance* of the claim itself, rather than any *procedures* required to adjudicate it (as with class actions)." (quoting *Mitsubishi Motors Corp.,* 473 U.S. at 633).  UCL public injunctive relief claims are no more complex than antitrust claims, employment discrimination claims, wage theft claims, and all sorts of other claims that are routinely considered and decided in arbitration.  *See e.g., Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220 (1987) ("Neither the potential complexity of RICO claims, nor the 'overlap' between RICO's civil and criminal provisions, renders [RICO] claims nonarbitrable. Moreover, the public interest in the enforcement of RICO does not preclude submission of such claims to arbitration."); *Mitsubishi Motors Corp.,* 473 U.S. at 633 (antitrust claims arbitrable); *Circuit City Stores, Inc. v. Najd,* 294 F.3d 1104, 1107 (9th Cir. 2002) (California Fair Employment and Housing Act claims arbitrable); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 723–24 (9th Cir. 1999) (Lanham Act claims arbitrable); *Nghiem v. NEC Electronic, Inc.,* 25 F.3d 1437 (9th Cir. 1994) (race discrimination and wrongful termination claims arbitrable).  *Sakkab* considered and rejected Citibank's argument that public injunctive relief could make arbitration slower or more costly because "the same could be said of any complex or fact-intensive claim."  803 F.3d 438.  Such arguments are not only foreclosed by *Sakkab*, but they represent precisely the kind of hostility to arbitration that the FAA was designed to overcome.

Despite Citibank's arguments to the contrary, arbitrators can and do issue injunctions, despite the need to consider the public interest and notwithstanding the complexity of the substantive claims.  *See e.g., Biller v. Toyota Motor Co.,* 668 F.3d 655,

18

666–70 (9th Cir. 2012) (upholding arbitrator's award of permanent injunction prohibiting disclosure of confidential information); *Saturday Evening Post Co. v. Rumbleseat Press, Inc.*, 816 F.2d 1191, 1194 (7th Cir. 1987) (upholding arbitrators' award of permanent injunction preventing copyright infringement); *Ergobilt, Inc. v. Neutral Posture Ergonomics, Inc.*, No. Civ.A.3:97-CV-2548-L, 2002 WL 1489521 (N.D. Tex. July 9, 2002) (upholding arbitrator's award of permanent injunction regarding a trademark). Indeed, in the antitrust context, the Supreme Court has recognized that injunctions are not merely "to provide public relief, but to serve as well the high purpose of enforcing the antitrust laws." *California v. Am. Stores Co.*, 495 U.S. 271, 284 (1990). Yet arbitrators can, and do, issue injunctions in antitrust cases. *E.g.*, *Italian Colors*, 570 U.S. at 238-239 (antitrust claims arbitrable); *Am. Cent. E. Tex. Gas Co. v. Union Pac. Res. Grp., Inc.*, 93 F. App'x 1, 11 (5th Cir. 2004) (confirming arbitral award that included broad injunctive relief under antitrust statutes). In sum, while Citibank chose to exclude public injunctive relief from arbitrable claims under its Account Agreement, no provision of California or federal law erects any legal barrier to arbitrating such claims under California's consumer protection statutes, and the alleged complexity of such cases is no basis for finding preemption.

Lastly, Citibank relies upon the recent United States Supreme Court's decision in *Epic Systems* for the proposition that the *McGill* rule would offend the preservation of the "traditional arbitration process." (Deft. Br. at 16–17.) *See Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612 (2018). However, *Epic* did not alter the well-established FAA preemption analysis applied by *Roberts* and the Ninth Circuit in *Sakkab*.

Plaintiffs in *Epic* argued that the FAA's savings clause permits courts not to enforce an arbitration agreement that includes a class action waiver, because such a waiver violates the National Labor Relations Act ("NLRA"). The Supreme Court rejected plaintiffs' characterization of the NLRA and concluded that plaintiffs' challenge to the individualized nature of arbitration proceedings interfered with one of arbitration's fundamental attributes, which is its "traditionally individualized and informal nature." *Epic*, 138 S. Ct.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

1612, 1622. In other words, *Epic* simply reaffirmed the traditional FAA preemption analysis that "courts may not allow a contract defense to reshape traditional individualized arbitration." *Id*. at 1623.

Thus, both the Ninth Circuit's decision in *Sakkab*, and the Court's decision in *Roberts* are consistent with the Supreme Court's holding in *Epic*. In *Sakkab*, the Ninth Circuit concluded that a rule prohibiting waiver of PAGA claims did not interfere with the fundamental attributes of arbitration because with PAGA claims, unlike with class actions, the parties are free to select informal arbitration procedures. 803 F.3d at 435. Likewise, the *Roberts* Court, relying on *Sakkab*, concluded that claims for public injunctive relief do not interfere with the fundamental attributes of arbitration because parties are free to adopt the informal procedures available in arbitration to arbitrate such claims. *Roberts*, 2018 WL 1317346, at *6. Further, the Ninth Circuit acknowledged that PAGA claims can be complex, but unlike class actions, any complexity "flows from the substance of the claim itself, rather than any procedures *required* to adjudicate it (as with class actions)." *Sakkab*, 803 F.3d at 438 (emphasis added). The *Roberts* Court, relying once again on *Sakkab*, concluded that claims for public injunctive relief, like PAGA claims, are also not necessarily procedurally complex like a class action. *Roberts*, 2018 WL 1317346, at *7. The analyses of the Court in *Roberts* and the Ninth Circuit in *Sakkab* stating that arbitrating claims for public injunctive relief and PAGA claims, respectively, do not require any procedures that fundamentally interfere with the attributes of arbitration, is entirely consistent with *Epic*.

Thus, Defendant's attempt to liken public injunctive relief to class arbitration as articulated in *Epic* for its argument that the *McGill* rule interferes with the fundamental attributes of arbitration fails. (Deft. Br. at 17.)  Public injunctive proceedings share none of the complexities and expenses of class action proceedings, which the Supreme Court concluded would interfere with the fundamental attributes of arbitration. *See Concepcion*, 563 U.S. at 348-51. This is because claims for public injunctive relief do not require any

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

of the formal Rule 23 procedures (e.g., class certification, notice, and opt-out rights). *McGill*, 393 P.3d at 96-97; *cf. Concepcion*, 563 U.S. at 348-50 (finding that class-wide arbitration would implicate formal Rule 23 procedures that would "sacrifice[] the principal advantage of arbitration—its informality"; required protection of the due process rights of absent parties who would be bound by a judgment; and increased risks to defendants). Nor do claims for public injunctive relief implicate the due process rights of absent individuals. Finally, Citibank does not argue, nor could it, that arbitration of public injunctive relief would increase any risks to defendants.

Accordingly, the *McGill* rule does not interfere with the fundamental attributes of arbitration and cannot be preempted on that basis.

### 3. The *McGill* Rule Does Not Effectively Disfavor Arbitration

Moreover, the *McGill* rule does not effectively disfavor arbitration because it expresses no preference regarding whether claims for public injunctive relief are litigated or arbitrated; it prohibits only the *complete waiver* of public injunctive relief. *See McArdle,* 2017 WL 4354998, at *3 ("The *McGill* rule is a generally-applicable contract defense."); *see also Blair,* 2017 WL 4805577, at *4 (declaring the *McGill* rule is not preempted because it permits parties to "compel public injunctive relief claims to arbitration"). A state rule interferes with arbitration when it prohibits the arbitration of a particular type of claim. *See Concepcion,* 563 U.S. at 341; *see also Marmet Health Care Ctr., Inc. v. Brown,* 565 U.S. 530, 532–33 (2012); *Sakkab,* 803 F.3d at 434 (stating that since the *Iskanian* rule "expresse[d] no preference regarding whether individual PAGA claims are litigated or arbitrated," and merely provided that such claims "may not be waived outright," it was not hostile to arbitration). Like the *Iskanian* rule, the *McGill* rule does not diminish the parties' freedom to agree to resolve claims for public injunctive relief in arbitration. *See McGill,* 393 P.3d at 97–98. Indeed, the Ninth Circuit has determined that claims for public injunctive relief can be pursued in arbitration. *See Ferguson,* 733 F.3d at 937; *see also Lee v. Postmates, Inc.,* No. 18-cv-03421-JCS, 2018 WL 4961802, at *8–9 (N.D. Cal. Oct. 15,

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

2018) (finding that an agreement that permitted arbitration of claims for public injunctive relief was not invalid under *McGill*). *McGill* is completely consistent with this precedent.

Since Citibank chose to expressly prohibit public injunctive relief in the arbitration forum too, that fact does away with Citibank's preemption argument.

### 4. The *McGill* Rule is in Accord With the United States Supreme Court's Decision in *Italian Colors*

Lastly, Citibank erroneously argues that *McGill's* own preemption analysis is incorrect because it misapplies the Supreme Court's decision in *Italian Colors*, which held that the "effective vindication" doctrine does not apply to state law claims. *See Italian Colors,* 570 U.S. at 235. Under the "effective vindication" doctrine, courts may invalidate arbitration agreements that operate as a waiver of *federal* statutory rights. *Id.* Citibank's argument misconstrues *McGill,* which relied on and is consistent with *Italian Colors,* not the effective vindication doctrine. *Italian Colors* recognized a distinction between barriers that make it impractical to pursue certain claims, and barriers (like Citibank's account agreement here) that would completely eliminate a party's right to pursue claims at all. *See Italian Colors,* 570 U.S. at 236. While an arbitration agreement and class action waiver that made pursuit of certain statutory remedies impracticable were enforceable, this was because they did not constitute a "prospective waiver of a party's right to pursue statutory remedies." *Id.* at 235 (citing *Mitsubishi Motors,* 473 U.S. at 637 n. 19) (emphasis in original). But the Supreme Court opined that "an arbitration agreement ***forbidding*** the assertion of certain statutory rights" might be different. *Id.* at 236 (emphasis added). The *McGill* rule addresses exactly such an agreement.

In any event, it does not matter whether the *McGill* court's own preemption analysis is correct. *Sakkab,* which is binding, sets forth the applicable standard for preemption. As demonstrated above, *McGill* complies with that standard. Accordingly, Citibank's waiver of the right to seek public injunctive relief in any forum is therefore unenforceable.

### D. A Stay Should Be Denied

Citibank also requests that the Court stay the action pending the completion of Plaintiff's individual arbitration proceeding. However, because Plaintiff's claims are not subject to arbitration because the Arb. Clause is unenforceable for all of the reasons stated above, Defendant's request is moot. *See Whole Space Indus., Ltd. v. Lewis Hyman, Inc.,* No. CV 10-731 PSG (JCX), 2010 WL 11549574, at *2 (C.D. Cal. Aug. 2, 2010) ("By its terms, Section 3 of the Federal Arbitration Act provides only for the stay of an action pending arbitration of arbitral claims."). In the unlikely event the Court compels arbitration, Plaintiff respectfully requests that the Court exercise its discretion to dismiss the case, rather than to stay it, so as to allow for an immediate appeal of this issue. *See Sparling v. Hoffman Constr. Co.,* 864 F.2d 635, 637–38 (9th Cir. 1988); *Farrow v. Fujitsu Am., Inc.,* 37 F. Supp. 3d 1115, 1126 (N.D. Cal. 2014) ("When arbitration is mandatory, courts have discretion to stay the case under 9 U.S.C. § 3 or dismiss the litigation entirely.").

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Citibank's motion to compel arbitration and stay the action in its entirety.

Dated: May 10, 2019

**CARLSON LYNCH LLP**

*/s/ Todd D. Carpenter*
Todd D. Carpenter (CA 234464)
 *tcarpenter@carlsonlynch.com*
Brittany C. Casola (CA 306561)
 *bcasola@carlsonlynch.com*
1350 Columbia St., Ste. 603
San Diego, California 92101
Telephone: 619.762.1900
Facsimile:  619.756.6991

Jeffrey D. Kaliel (CA Bar No. 238293)
 *jkaliel@kalielpllc.com*
Sophia Goren Gold (CA Bar No. 307971)
 *sgold@kalielpllc.com*
**KALIEL PLLC**
1875 Connecticut Ave., NW, 10th Floor
Washington, D.C.  20009

23

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

Telephone: (202) 350-4783

*Attorneys for Plaintiff*
*and the Putative Class*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO CITIBANK, N.A.'S MOTION TO COMPEL ARBITRATION
AND STAY ACTION

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 10, 2019, a true and correct copy of the following documents were electronically filed and served on all counsel of record who are deemed to have consented to electronic service via the Court's CM-ECF system:

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO CITIBANK, N.A.'S
MOTION TO COMPEL ARBITRATION AND STAY ACTION**

Pursuant to the CM-ECF system, registration as a CM-EC user constitutes consent to electronic service through the Court's transmission facilities. Any other counsel of record will be served by electronic mail and U.S. mail.

Dated: May 10, 2019                **CARLSON LYNCH LLP**


By: */s/ Todd D. Carpenter*
Todd D. Carpenter